R. LIVINGSTON BEECKMAN, Plaintiff, *v.* LUCY COTTON THOMAS and Another, as Executors, etc., of EDWARD RUSSELL THOMAS, Deceased, Defendants.

First Department, November 9, 1934.

*Myles A. Walsh* of counsel [*Martin W. Littleton*, attorney], for the plaintiff.

*Joseph R. Kelley* of counsel [*S. Whitney Landon* with him on the brief; *Swiger, Scandrett, Chambers & Landon*, attorneys], for the defendants.

MARTIN, J. The controversy here submitted for decision involves the interpretation of a trust agreement entered into by Edward Russell Thomas, deceased, as settlor, R. Livingston Beeckman, as beneficiary, and the Central Union Trust Company of New York, as trustee. It requires a determination of the liability of the defendants, as executors of the estate of Edward R. Thomas, for a decrease in income from the trust, arising in certain specified circumstances, after reinvestment of the proceeds of securities originally turned over to the trustee.

Samuel Thomas died a resident of the State of New York on January 11, 1903, leaving a last will and testament which was duly admitted to probate on March 26, 1903. The will disposed of a large estate and created separate trust funds for the widow, two sons and a daughter of the testator. The trusts for the benefit of the daughter, Eleanor Thomas, and the son, Edward R. Thomas, consisted of the residue of the estate.

The plaintiff in this action was the husband of Eleanor Thomas, who died on December 20, 1920, leaving a will specifying that this plaintiff, her husband, was to be her sole legatee and devisee.

Thereafter questions arose concerning the interpretation of the will of Samuel Thomas with relation to the trust fund of which his daughter had been made life beneficiary. This plaintiff contended that Samuel Thomas died intestate as to such trust fund and that, therefore, it passed by operation of law to his next of kin and in part to the estate of Eleanor Thomas Beeckman and thus to plaintiff, as her sole legatee and devisee. Edward R. Thomas, a son of Samuel Thomas and a brother of Eleanor Thomas Beeckman and the life beneficiary of the other trust created out of the residue of Samuel Thomas' estate, contended that upon his sister's death her share became a part of the trust fund for his benefit.

On February 16, 1921, the trustees under the will of Samuel Thomas, deceased, brought an action for the judicial settlement of their accounts and for a construction of the will so that the trust fund for the benefit of Eleanor Thomas Beeckman might be properly disposed of and the trustees advised by the court with respect thereto.

Prior to the judicial determination and interpretation of the will, this plaintiff and Edward R. Thomas entered into an agreement dated July 11, 1921, whereby the plaintiff agreed to sell and assign to Edward R. Thomas all the plaintiff's interest in the estate of Samuel Thomas and in all moneys that he might receive from the estate of Eleanor Thomas Beeckman, and Edward R. Thomas agreed that if the final decision by the courts in the action

for a judicial construction of the will of Samuel Thomas should be to the effect that Samuel Thomas died intestate as to the principal of the trust fund created for the benefit of his daughter and, therefore, upon her death it immediately became divisible among her next of kin, then Edward R. Thomas would pay the plaintiff $200,000 and would purchase securities authorized by law for the investment of trust funds in an amount sufficient to yield an annual income of $50,000 and place same in trust for the benefit of the plaintiff during his lifetime.

In the event that the courts placed a different construction on the will, Edward R. Thomas agreed to create a trust with an income of $65,000 annually. We are not here concerned with that feature of the agreement.

The agreement contained the following provisions:

" *Second.* * * * Upon the payment of the said two hundred thousand dollars in cash and the deposit of the said securities subject to said trust agreement, all obligation of the said party of the second part to the party of the first part shall have been fulfilled and the party of the second part shall be under no further obligation."

" *Sixth.* Neither the said Edward R. Thomas nor his estate shall be obligated to make any of the payments above provided for except in the manner above provided and out of the specific funds above provided for as the source of such payments."

Thereafter the courts construed the will as the plaintiff had contended it should be construed and declared that Samuel Thomas had died intestate as to the principal of the trust fund created for the benefit of his daughter.

On January 16, 1922, in accordance with the agreement of July 11, 1921, Edward R. Thomas and the plaintiff entered into an agreement with the Central Union Trust Company whereby Edward R. Thomas conveyed, assigned and delivered to the said trust company, as trustee, certain described securities, the income and interest of same to be collected and paid to plaintiff in equal quarterly payments during his lifetime (any excess income above $50,000 to be paid to the settlor), and upon the death of the plaintiff the income was to go to the settlor for his lifetime, and upon the death of the survivor the trust was to terminate and the principal and accumulated income were to be paid to the lawful issue of the settlor or his estate.

The agreement provided that during the joint lives of the settlor and Mr. Beeckman, the settlor with Mr. Beeckman's consent might direct the sale of any of the securities and the purchase of others to be selected by the settlor and Mr. Boeckman. In the

event that Mr. Beeckman survived the settlor and any securities were paid or retired the proceeds thereof were to be invested in such securities as Mr. Beeckman and the son of the settlor or, if he was a minor, his guardian might select.

It was provided that if upon reinvestment of the proceeds of securities so paid or retired or if upon reinvestment of the proceeds of securities sold by the trustees with the consent of the settlor and Mr. Beeckman in securities subject to Federal income tax " the trust fund shall fail to produce an income of $50,000 a year, the settlor shall, and he hereby covenants and agrees with the said Beeckman, for himself, his executors, administrators and assigns, to pay to said Beeckman any deficiency between the amount of said income and the sum of $50,000 in each and every year in which any such deficiency may occur, provided said deficiency shall not exceed the sum of $6,000 in any one year, and if the deficiency in any one year shall exceed the sum of $6,000, the liability of the settlor and his estate shall be limited to the sum of $6,000 for such year."

The following additional provision is also set forth in the agreement: " It is understood and agreed however between the said Thomas and the said Beeckman that the said Thomas does not guarantee any of the securities which may at any time form a part of the trust fund and neither he nor his estate shall be required to make up any deficit of income under fifty thousand dollars which may result from the passing or default of any interest coupons or other income from any of said securities; but this shall not affect the obligation of the settlor and his estate to pay the sums of $6,000 per annum to make up deficiencies of income in the cases hereinabove specifically provided for."

During the year ending January 15, 1933, $8,864.27 less than $50,000 was paid to the plaintiff. The net deficiency after proper deductions was $7,885.30. Of this sum the defendants, as executors of the estate of Edward R. Thomas, paid to the plaintiff the sum of $2,705.55, which was received without prejudice to any of the parties in this action. The plaintiff now seeks the difference between $6,000 and $2,705.55, or $3,294.45, for which sum the defendants claim they are entitled to judgment.

The sole issue in this case is whether, under the terms of the agreements of July 11, 1921, and January 16, 1922, the decedent was and his estate now is liable in certain cases of reinvestment, for a reduction of income caused by a difference between the yield of the securities purchased and those that were either sold or retired and paid, and for that difference only, or whether, in addition to such liability, the estate is now liable for any subsequent default,

however remote, in the payment of the original return, fixed at the time of purchase of securities with the proceeds of securities either sold or retired and paid. The parties agree that in either event liability is limited to $6,000 a year.

The plaintiff contends that he is entitled to judgment under the provisions of the agreement. The defendants say that in any interpretation of the trust agreement of January 16, 1922, consideration should be given the original agreement of July 11, 1921; that a reading of it discloses that neither Edward R. Thomas nor his estate were to be liable for a decreased yield except in the case of reinvestment in certain specified instances, and that they were only to be liable for the difference between the yield of the securities disposed of and the yield from securities purchased with the proceeds thereof and not for subsequent defaults in payment of the interest or dividends upon such securities.

We are of the opinion that the plaintiff is entitled to judgment. The intention of the parties is clearly expressed in the trust agreement which provides that an income of $50,000 should be given to the plaintiff. In certain contingencies provision is made for the reinvestment of trust funds and in the event of a return of less than $50,000 annually the settlor agreed to pay the deficiency to the extent of $6,000 a year.

The Court of Appeals, in another action involving this trust fund, but not this particular point, expressed itself as being of the same opinion. In an action brought to determine what disposition should be made of any surplus income over $50,000 after the death of the settlor, that court, in *Central Union Trust Co.* v. *Trimble* (255 N. Y. 88), held that such surplus should go to the settlor's son as his remainderman and not to his executor. In the course of its opinion the court said (at p. 91): " There was an undertaking on the part of the settlor if the income fell below $50,000 annually, to make good the yearly deficiency to the extent of $6,000."

The language of the trust instrument is decisive on this point. With respect to the reinvestment of the proceeds of securities sold or securities paid and retired the agreement reads that if the trust fund " shall fail to produce an income of $50,000," the settlor, his executors, administrators and assigns, shall pay any deficiency which shall not exceed the sum of $6,000.

Realizing the possibility of an increased return on the trust *res* and a surplus income above $50,000, the settlor provided that such surplus should go to him during his lifetime. Upon his death the trustee sought a determination of what disposition should be made of any such surplus and the Court of Appeals held it should go to the settlor's son. We think that the parties hereto realized that

with the passing of years there was a possibility that a deficiency might result and the settlor agreed to pay that deficiency to the extent of $6,000. As he was to benefit from any increased or surplus income, he also agreed to make good any deficiency up to the sum of $6,000.

Judgment should be entered for the plaintiff for the sum of $3,294.45, with costs.

MERRELL, O'MALLEY, TOWNLEY and UNTERMYER, JJ., concur.

Judgment directed for the plaintiff for the sum of $3,294.45, with costs. Settle order on notice.